UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL R. HALLER,                                       Case No. 1:11-cv-881
        Plaintiff,                                      Beckwith, J.
                                                        Litkovitz, M.J.


    vs


U.S. DEPARTMENT OF HOUSING &            **ORDER AND REPORT**
URBAN DEVELOPMENT, et al.,              **AND RECOMMENDATION**
        Defendants.


        Plaintiff Daniel Haller, proceeding pro se, brings this action against a number of

governmental, regulatory and private entities under various federal, constitutional and state

common law provisions.  Plaintiff's claims arise from his unsuccessful efforts to obtain a

mortgage loan modification from mortgage providers and funds from certain mortgage relief

programs, and his challenge to a successful foreclosure action brought against him in state court.

This matter is before the Court on the motions to dismiss filed by the following defendants: (1)

Securities Investor Protection Corp. (SIPC) (Doc. 22); (2) Lerner Sampson & Rothfuss (Lerner

Sampson) (Doc. 25); (3) North American Securities Administrators Association (NASAA), Jack

Herstein and Steven Irwin (Doc. 29); (4) the State of Ohio and Ohio Attorney General Mike

DeWine (Doc. 34); (5) JPMorgan Chase & Co. (Chase) (Doc. 46); (6) Ohio Housing Financing

Agency (OHFA) (Doc. 48); (7) MERSCORP, Inc. (MERS), Federal National Mortgage

Association Corporation (Fannie Mae) and IBM/LBPS-Seterus (Seterus) (Doc. 49); and (8) First

Horizon Home Loans (First Horizon) (Doc. 52).[1]  Plaintiff has filed a memorandum in opposition

to defendant Lerner Sampson's motion to dismiss (Doc. 55) and defendant Lerner Sampson has

filed a reply in support of its motion.  (Doc. 59).  Plaintiff has also filed a memorandum in

opposition to defendant SICP's motion to dismiss (Doc. 56) and defendant SICP has filed a reply

in support of its motion.  (Doc. 57).  Plaintiff has not filed a response in opposition to any of the

other pending motions.

This matter is also before the Court on plaintiff's motion to stay proceedings.  (Doc. 60).

The following defendants have filed memoranda in opposition to the motion to stay: (1) MERS,

Fannie Mae and Seterus (Doc. 63); NASAA, Jack Herstein and Steven Irwin (Doc. 64); Lerner

Sampson (Doc. 65); and SIPC (Doc. 66).

## I. Background

Plaintiff filed the pro se complaint in this action on December 16, 2011, after a decree of

foreclosure was entered against him in the Hamilton County Court of Common Pleas.  (Doc. 1).

Plaintiff's complaint makes the following allegations in support of his claims: Plaintiff entered

into a mortgage agreement with First Horizon on March 21, 2008, pursuant to which he was to

begin making payments on July 1, 2008.  (Doc. 1, ¶ 44).  When plaintiff's payments became due,

First Horizon sold the mortgage servicing to Chase.  (*Id*., ¶ 45).  Plaintiff became unemployed in

July 2008.  (*Id*., ¶ 46).  Lerner Sampson filed a foreclosure action against him on behalf of First

---

[1]Defendant Commodity Futures Trading Commission and defendants U.S. Department of Housing and Urban Development, Office of the Comptroller of Currency, Office of Thrift Supervision, Board of Governors of the Federal Reserve System, Consumer Financial Protection Bureau, U.S. Securities and Exchange Commission, U.S. Department of the Treasury, and the United States of America have also filed motions to dismiss (Docs. 61, 67), but those motions are not presently before the Court.  Two defendants named in the complaint, Federal Deposit Insurance Corporation and National Credit Union Administration, have not filed motions to dismiss.

Horizon in the Hamilton County, Ohio Court of Common Pleas.[2]  (*Id.*, ¶ 47).  After First Horizon

dismissed the complaint, plaintiff entered into a loan forbearance program with Chase, which

ended in March 2009.  (*Id.*, ¶¶ 47, 48).  Plaintiff was to contact Chase if he remained

unemployed, and he left several messages over a two-month period without receiving a return

call from Chase.  (*Id.*, ¶¶ 48, 49).

Plaintiff applied for financial assistance on March 12, 2009, through the Emergency

Homeowners Relief Program (EHLP), 12 U.S.C. § 2701 (Emergency Housing Act of 1975) as

amended.  (*Id.*, ¶ 50).  The assistance was offered through the Department of Housing and Urban

Development (HUD) and the State of Ohio via a non-profit organization called Home is the

Foundation located in Eaton, Ohio.  (*Id.*).  However, plaintiff did not receive any financial

assistance.  (*Id.*, ¶ 51).  Plaintiff's repeated efforts to contact Chase were unsuccessful.  (*Id.*, ¶

53).

Plaintiff became gainfully employed in November 2009.  (*Id.*, ¶ 54).  He applied for

mortgage assistance through EHLP, again working through HUD and the State of Ohio via "Save

the Dream Ohio," when Chase came to Cincinnati, Ohio in a purported effort to assist

homeowners.  (*Id.*, ¶ 55).  Plaintiff was told by the agent, who plaintiff later learned was with the

Cincinnati Home Ownership Preservation Office ("HOC"), that she would follow up with him.

---

[2]This Court, which "may take judicial notice of proceedings in other courts of record," *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)), has examined documents filed in the state foreclosure action and the docket records from that case in an effort to further ascertain the factual bases of plaintiff's claims against the various defendants.  The Hamilton County Clerk of Court's online docket records (see http://www.courtclerk.org) indicate that First Horizon filed an action in the Hamilton County Common Pleas Court on July 18, 2008, against plaintiff and Jane Doe, unknown spouse of plaintiff, for failure to meet their mortgage loan payment obligations (*First Horizon Home Loans v. Daniel R. Haller*, Case No. A0806840).  (*See also* Doc. 25, Exh. A.)  Lerner Sampson served as counsel to First Horizon in the foreclosure action.  A notice of dismissal was filed in the action on March 3, 2009.  (*Id.*, Exh. B).

(*Id.*, ¶ 55). On December 18, 2009, the agent informed plaintiff that both "HOC" and Chase had lost his paperwork. (*Id.*, ¶ 58). Thereafter, Chase resumed negotiations and offered a modification of the mortgage at the same monthly cost, which was intentionally higher than plaintiff could afford. (*Id.*, ¶ 60). Chase then transferred the loan servicing to Seterus. (*Id.*, ¶ 61).

Plaintiff was in negotiations with Seterus when Lerner Sampson wrongfully interfered in the matter as a debt collector claiming to represent Chase. (*Id.*, ¶ 62). Lerner Sampson filed a second foreclosure action in the Hamilton County Court of Common Pleas on behalf of Fannie Mae on October 4, 2010, purportedly without standing, "without subject matter to invoke the jurisdiction of the court," and in the wrong jurisdiction.[3] (*Id.*, ¶ 63; Doc. 25, Exh. C). Plaintiff asserted in pre-trial conferences that First Horizon breached the mortgage agreement and the case could not be legally heard. (*Id.*, ¶ 65). When his assertions were ignored, plaintiff filed a complaint with the Ohio Attorney General's Office, Complaint No. 565130, and was informed that he did not have any emergency fund applications on file. (*Id.*, ¶¶ 66, 67). When plaintiff made inquiries of Chase, he was informed that a foreclosure process was discontinued on August 26, 2010. (*Id.*, ¶ 69). Plaintiff filed another "Save the Dream Ohio/Restoring Stability" application and made appointments with "HOC," but the application was closed with false notations on the application. (*Id.*, ¶ 70). Plaintiff received no response when he asked the

_____

[3]The Hamilton County Common Pleas Court docket records reflect that the case is captioned *Federal National Mtg. Assoc. v. Daniel R. Haller*, Case No. A1009020; attorney Erin E. Bjerkaas, who was employed by defendant Lerner Sampson, served as counsel to Fannie Mae in the proceeding; co-counsel made an appearance on November 14, 2011; and Judge Helmick granted summary judgment in favor of Fannie Mae and entered a decree of foreclosure on November 30, 2011. (*See also* Doc. 25, Exhs. C, D). The docket records reflect that plaintiff filed a Notice of Appeal on December 15, 2011 (Case No. C1100823). (*See also* Doc. 59, Exh. A).

4

individual who had made the false notations why she had made them. (*Id.*, ¶ 71).

The Court of Common Pleas entered summary judgment and a decree of foreclosure against plaintiff on November 30, 2011, despite the fact that it did not have jurisdiction over the foreclosure action. (*Id.*, ¶ 72). Plaintiff is now seeking an injunction in this Federal court. (*Id.*, ¶ 73). The state court appears to prove the cases before it on behalf of those who file them while plaintiff has to defend the cases on his own; the court dismissed plaintiff's motion on the ground he did not seek leave of court despite the fact that he is pro se; Lerner Sampson violated the court's rules by having several attorneys before the court who were not of record; and the court in the second foreclosure action has commonly asked the opposing party to write up a decree for the court when it is obligated to make its own decision. (*Id.*, ¶¶ 76-79).

Plaintiff claims he has a right to his property, to freely negotiate contracts without interference, to the emergency funds created by Congress, and to due process and equal protection afforded by law against all crimes described in the complaint. (*Id.*, ¶¶ 80-83). Plaintiff claims that all service providers are in violation of 24 C.F.R. § 203, a regulation that governs HUD. (*Id.*, ¶ 85). Plaintiff also makes a number of vague and general allegations pertaining to the regulation of housing mortgages and a fraudulent scheme by state and federal authorities, the banks, and other private entities by which banks and others profit and homeowners are deprived of funding intended for them. (*Id.*, ¶¶ 86-103).

Plaintiff requests immediate injunctive relief as to the Hamilton County Court of Common Pleas action and the scheduling of a jury trial; review by a panel to determine if this matter can proceed as a class action; and a nationwide injunction against financial transactions or transfers involving commercial and residential properties that meet the criteria of illegal

securitized mortgages

## II. Rule 12(b)(6) standard

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Because plaintiff is a pro se litigant, his filings are more liberally construed than are pleadings drafted by lawyers. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pleadings of *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers")); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

6

### III.  Plaintiff's motion to stay (Doc. 60)

Plaintiff filed a motion to stay proceedings, for a period of preferably 90 days, on March 15, 2012.  Plaintiff alleges that investigations have revealed that additional parties are involved in this matter.  Plaintiff requests additional time to complete the initial investigation, receive documents, seek counsel who specialize in mortgage-backed securities, and request leave to amend the complaint.  The MERS defendants, the NASAA defendants, Lerner Sampson, and SIPC oppose plaintiff's request for a stay.  (Docs. 63, 64, 65, 66).  Defendants assert that plaintiff should have taken the actions on which he premises his motion for a stay prior to filing the complaint in this action; he can continue to complete his initial investigation, seek the assistance of counsel, and request leave to name additional parties while the lawsuit proceeds; the subpoenas attached to the motion are procedurally deficient; and it would prejudice defendants if a stay were granted as they have filed motions to dismiss the claims against them which are pending before the Court and the jurisdictional defects in plaintiff's complaint cannot be cured.

Plaintiff has not shown good cause for a stay of these proceedings.  Plaintiff has had ample opportunity to investigate the facts giving rise to his claims and to seek the assistance of counsel.  Furthermore, to stay these proceedings would prejudice the defendants who filed their motions to dismiss the claims against them before plaintiff moved to stay the proceedings.  Accordingly, plaintiff's motion is DENIED.  The Court will allow plaintiff an opportunity to respond to the motions to dismiss that were filed after plaintiff filed the motion for stay on March 15, 2012, before issuing a Report and Recommendation on those motions -  Commodity Futures Trading Commission's Motion to Dismiss (Doc. 61) and U.S. Department of Housing and Urban Development, Office of the Comptroller of Currency, Office of Thrift Supervision, Board of

Governors of the Federal Reserve System, Consumer Financial Protection Bureau, U.S.

Securities and Exchange Commission, U.S. Department of the Treasury, and the United States of

America's Motion to Dismiss (Doc. 67).

## IV. Defendant Lerner Sampson's Motion to Dismiss (Doc. 25)

### A. Parties' positions

Defendant Lerner Sampson moves to dismiss plaintiff's claims against it pursuant to Rule

12(b)(1) on the grounds that plaintiff's claims are barred by the doctrine of res judicata, the

*Rooker-Feldman* doctrine, and the doctrine of "attorney immunity." Defendant also moves to

dismiss plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

for relief. Lerner Sampson asserts that plaintiff has failed to state a tort claim for "wrongful

action" against it and plaintiff has not stated a claim for tortious interference with a contract.

In response, plaintiff asserts that defendant Lerner Sampson committed a "wrongful

action" and violations of his equal protection and due process rights by fraudulently bringing the

foreclosure suit in state court against him when Lerner Sampson did not have standing and the

state court did not have subject matter jurisdiction over the lawsuit. Plaintiff also alleges that

Lerner Sampson filed the case before obtaining a retainer. Plaintiff contends that by filing the

lawsuit on behalf of Fannie Mae while he was conducting negotiations with Seterus, Lerner

Sampson committed an antitrust violation and the tort of unlawful interference with legitimate

business negotiations. Plaintiff further alleges that Lerner Sampson committed the tort of

malpractice by filing a complaint when it knew there was no standing and by drawing up fake

paperwork to support a fraudulent case.

Plaintiff also claims that Lerner Sampson committed a false representation by filing the

state court action on behalf of Fannie Mae when Fannie Mae did not have ownership of the note; it was not the holder of the note and the mortgage at the time the state court suit was filed; neither a state court party or an absent party has the original paperwork; and the paperwork Lerner Sampson presented was fraudulently created by it.

Finally, plaintiff alleges that Lerner Sampson is in violation of the anti-trust laws and has participated in the violation of a number of United States Code provisions.

### B. The claims against Lerner Sampson should be dismissed.

A review of the complaint clearly discloses that by bringing his claims against Lerner Sampson in this Court, plaintiff is challenging actions taken in the Hamilton County Court of Common Pleas foreclosure proceedings and is seeking to enjoin enforcement of the foreclosure decree entered by the state court. A federal court lacks jurisdiction under the *Rooker-Feldman* doctrine to consider claims such as those presented by plaintiff in this case that ask the federal court to sit as a state appellate court to review state-court determinations. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The *Rooker-Feldman* doctrine "stands for the proposition that a federal district may not hear an appeal of a case already litigated in the state court." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995). Rather, a party raising a federal question must appeal a state court decision through the state system and then appeal directly to the United States Supreme Court. *Id.* The doctrine applies where, as here, a case is brought by one who has lost in a state court action, who is complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, and who is asking the district court to review and reject that judgment. *See Exxon Mobile Corp. v. Saudia Basic Indus. Corp.*, 544 U.S. 280,

284 (2005).  The critical question in determining if the doctrine applies is whether the "source of injury" upon which the plaintiff bases his federal claim is a state-court judgment.  *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008).  *See also Hines v. Franklin Savings & Loan*, No. 1:09cv914, 2011 WL 882976, at *2  (S.D. Ohio Jan. 31, 2011) (Bowman, M.J.) (Report & Recommendation), adopted as modified, 2011 WL 886128 (S.D. Ohio Mar. 10, 2011) (Weber, J.).  "'If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.'"  *Lawrence*, 531 F.3d at 368 (quoting *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006)).

The *Rooker-Feldman* doctrine has been broadly applied to cases challenging state foreclosure judgments.  *Hines*, No. 1:09cv914, 2011 WL 882976, at *3.  However, the Sixth Circuit and lower courts within the Sixth Circuit have "limited application of the doctrine to instances in which the litigant only seeks to reverse or set aside the state court judgment."  *Id.* The *Rooker-Feldman* doctrine does not apply to bar review if a litigant presents "'claims based on alleged violations of federal and state law' that are independent of alleged deficiencies in the state-court foreclosure proceeding."  *Id.* (and cases cited therein); *see also Hillman v. Edwards,* No. 2:11cv501, 2011 WL 4711979, at *1-2 (S.D. Ohio Oct. 6, 2011) (Smith, J.) (and cases cited therein).

Here, a review of the complaint demonstrates that the federal court lacks jurisdiction under the *Rooker-Feldman* doctrine to consider plaintiff's claims against Lerner Sampson. Plaintiff's allegations show that the source of the injury upon which he bases his claims against Lerner Sampson is the state court grant of summary judgment and entry of the foreclosure decree. Plaintiff alleges that Lerner Sampson apparently watches for electronic transfers and then files a

foreclosure complaint on that transfer "without retainer." (*Id.*, ¶ 64). Plaintiff alleges that the law firm engaged in "unlawful tortious interference, wrongful action" by twice suing him in the Hamilton County Court of Common Pleas, which was the wrong jurisdiction, in the absence of standing and without subject matter jurisdiction. (Doc. 1, ¶¶ 28, 47, 63). Plaintiff alleges that the state court illegally entered summary judgment against him in the absence of jurisdiction over the matter. (*Id.*, ¶ 72). Plaintiff claims that several Lerner Sampson attorneys who were not of record appeared before the Court of Common Pleas in violation of the court's Local Rule. (*Id.*, ¶ 78).

It is thus clear that in this federal proceeding, plaintiff is alleging deficiencies in the state foreclosure proceedings and is challenging the state court's ruling granting summary judgment and a decree of foreclosure against plaintiff. The only unlawful actions plaintiff alleges on the part of Lerner Sampson were purportedly taken by Lerner Sampson attorneys in connection with the filing and pursuit of the state foreclosure proceedings. Although plaintiff does not simply allege the state court ruling was invalid but also claims that Lerner Sampson violated his constitutional rights and engaged in "unlawful tortious interference" and "wrongful action" (Doc. 1, ¶ 28), plaintiff cannot circumvent the *Rooker-Feldman* doctrine by recharacterizing his claims of deficiencies in the state court proceedings and his request for review of the state court foreclosure ruling in this manner. *See Hillman*, No. 2:11cv00501, 2011 WL 4711979, at *2 (quoting *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204-05 (7th Cir. 2011) ("[The plaintiff" cannot circumvent the *Rooker-Feldman* doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations."). The source of plaintiff's injury resulting from actions taken by Lerner Sampson

11

derives solely from the state court decision to enter summary judgment and a decree of foreclosure against him in those proceedings. Plaintiff's request for immediate injunctive relief in this action on the ground that the state court did not have jurisdiction to render any judgment other than a dismissal of the foreclosure action (*Id.*, ¶ 111), is a request for relief from the state court's ruling. The complaint against Lerner Sampson states no claims for relief independent of the state court's entry of the foreclosure decree, and plaintiff's complaint against Lerner Sampson should be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

Insofar as the complaint can possibly be construed as asserting federal statutory or constitutional claims against Lerner Sampson independent of the state foreclosure proceedings, plaintiff's allegations are insufficient to vest federal jurisdiction in the federal court. District courts have original federal question jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In order to invoke the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, plaintiff must allege facts showing his claims arise under federal law. A claim arises under federal law when an issue of federal law appears on the face of a well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Although plaintiff asserts violations of his due process and equal protections rights, the anti-trust laws, the anti-racketeering laws, the federal securities laws, and 42 U.S.C. § 1985(3), among other federal provisions (Doc. 1, pp. 6-8), plaintiff has not alleged facts to show how defendant Lerner Sampson violated these provisions or any other federal constitutional or statutory rights of plaintiff. Nor has plaintiff alleged any specific facts to show that Lerner Sampson conspired with any other defendant to violate his civil rights. *See Heyne v.*

12

*Metropolitan Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011) (it is well-settled in the Sixth Circuit that conspiracy claims must be pled with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a conspiracy claim) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

For these reasons, the Court lacks subject matter jurisdiction over plaintiff's claims against defendant Lerner Sampson. Plaintiff's claims against Lerner Sampson should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[4]

## V. Defendant Securities Investor Protection Corporation's motion to dismiss (Doc. 22)

### A. The parties' positions

Defendant SIPC moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss any claims against it for lack of subject matter jurisdiction on the ground that plaintiff lacks standing to sue SIPC; pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; and pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (Doc. 22). Defendant SIPC has filed a memorandum in support of its motion. (Doc. 23). Defendant asserts that only the Securities and Exchange Commission may sue the SIPC in federal court under limited circumstances that do not apply here. Defendant further contends that the sole allegation in the complaint that references it fails to state a claim upon which relief can be granted. Finally, defendant contends that personal jurisdiction over it is lacking.

In his opposing memorandum (Doc. 56), plaintiff asserts that the complaint is based on antitrust violations and securities fraud committed against homeowners. As best the Court is

---

[4]In light of the Court's finding that federal subject matter jurisdiction is lacking, the Court need not address Lerner Sampson's arguments that plaintiff's claims are barred by the doctrines of res judicata and "attorney immunity."

able to discern, plaintiff asserts that although SIPC is supposed to protect investors in matters pertaining to mortgage-backed securities, it has failed and has insured predatory investors; SIPC improperly entered into settlement agreements ex parte that have led to the liquidation of brokerage firms in which plaintiff has an interest, including MF Global, in which JP Morgan Chase, an entity with some involvement in plaintiff's mortgage, was invested; and SIPC has failed to provide victims of the foreclosure crisis with monetary compensation.  Plaintiff also alleges that this Court has the authority following a jury trial to impose fines and jail time on executives who falsely sign financial statements.  Plaintiff provides a list of the federal statutory provisions defendant has allegedly participated in violating.

### B. Defendant SIPC should be dismissed from the lawsuit.

Defendant SIPC should be dismissed from this lawsuit pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  The SIPC was established by Congress as a nonprofit membership corporation to provide financial relief to the customers of failing broker-dealers with whom the customers had left cash or securities on deposit.  *SIPC v. Barbour*, 421 U.S. 412, 413 (1975). There is no private right of action for such individuals under the Securities Investor Protection Act of 1970 (SIPA), 15 U.S.C. § 78aaa et seq., to compel the SIPC to exercise its statutory authority for their benefit.  *Id*. at 425.  Thus, even if plaintiff were an individual for whose benefit the SIPC was created, he would have no private right of action against the organization under the SIPA.

Nor does the complaint, liberally construed, allege any wrongdoing against plaintiff by the SIPC.  The sole allegation in the complaint against defendant SIPC is that the "agency insures investors and settles lawsuits ex-parte, withholding currency belonging to ex-parte parties."

14

(Doc. 1, ¶ 41).  This allegation neither gives defendant SIPC "fair notice of what [plaintiff's] claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), nor sets forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  Thus, plaintiff's complaint against defendant SIPC does not withstand scrutiny under Rule 12(b)(6).

For these reasons, the complaint against defendant SIPC should be dismissed.[5]

## VI.  Motion to Dismiss by Defendants North American Securities Administrators Association, Jack Herstein and Steven Irwin (NASAA Defendants) (Doc. 29)

The NASAA defendants move to dismiss the complaint against them for failure to state a claim upon which relief can be granted.  (Doc. 29).  Plaintiff has not filed a memorandum in response to the motion to dismiss.  Defendant NASAA alleges that it is an international investor protection organization whose primary goal is to advocate and act for the protection of investors; Herstein is the President and Director of NASAA and the Assistant Director of the Nebraska Bureau of Securities; and Irwin is a NASAA Director and a Securities Commissioner for the Commonwealth of Pennsylvania.  The only allegation in the complaint that mentions any of these defendants is found at Doc. 1, ¶ 42, where plaintiff lists NASAA as a party and states: "This agency insures investors and settles lawsuits ex-parte, withholding currency belonging to ex-parte parties."  This allegation neither gives the NASAA defendants "fair notice of what [plaintiff's] claim is and the grounds upon which it rests," *Erickson*, 551 U.S. at 93, nor sets forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  Thus, plaintiff's complaint against the NASAA defendants does not

---

[5]The Court need not address SIPC's argument that the claims against it should be dismissed for lack of personal jurisdiction.

withstand scrutiny under Rule 12(b)(6) and should be dismissed.

## VII. Motion to Dismiss by Defendants State of Ohio and Ohio Attorney General Mike Dewine (Doc. 34)

The State of Ohio and Ohio Attorney General Mike Dewine move to dismiss plaintiff's complaint against them on the grounds they are entitled to immunity under the Eleventh Amendment, plaintiff's clams against them are barred by the Anti-Injunction Act, 28 U.S.C. § 2283, and the complaint fails to state a claim for relief. Plaintiff has not filed a memorandum in opposition to the motion.

The complaint makes the following allegations against the State of Ohio and the Ohio Attorney General: The Ohio Attorney General worked in conjunction with "Save the Dream" to withhold emergency funding and document collections. (Doc. 1, ¶ 35). The State of Ohio settled lawsuits ex parte and withheld currency belonging to ex-parte parties. (*Id.*, ¶ 37). Plaintiff applied for financial assistance on March 12, 2009, provided by the EHLP, working through HUD and the State of Ohio via Home is the Foundation. (*Id.*, ¶¶ 50, 51). Plaintiff did not receive any assistance from the emergency funds. (*Id.*, ¶ 51, 67). Plaintiff filed a complaint with the Ohio Attorney General's office, where an agent referred plaintiff to the "Save the Dream Ohio/Restoring Stability" website and informed plaintiff that the agent did not see any applications to the Emergency Fund filed by plaintiff. (*Id.*, ¶¶ 66, 67). According to the Ohio Attorney General's office, the reason mortgage loans are not made affordable is because of the federal banks. (*Id.*, ¶ 74). Settlements continue with the State Attorneys General, but not all of the victims are heard or made whole, and the Ohio Attorney General's office has admitted it is waiting on legislation and that the problem is with the federal banks. (*Id.*, ¶¶ 100, 101).

16

As best the Court is able to discern, the gist of plaintiff's complaint against the State of Ohio and the Ohio Attorney General is that these defendants have wrongfully failed to provide emergency mortgage assistance to plaintiff and have engaged in wrongdoing in connection with Ohio's statewide mortgage relief program. The Court lacks jurisdiction over plaintiff's claims against the State for these actions. Any form of relief sought against a State in federal court is barred under the Eleventh Amendment unless the State has expressly waived its sovereign immunity. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). Ohio has neither statutorily nor constitutionally waived its sovereign immunity in federal court. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (citing *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982)); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976). Thus, plaintiff's claims against the State of Ohio are barred by the Eleventh Amendment.

Plaintiff does not specify in the complaint whether he sues the Ohio Attorney General in his official or individual capacity. However, because plaintiff lists "State of Ohio" and "Attorney General Mike DeWine" together in the caption of the complaint, he does not separately name the Ohio Attorney General as a party in the body of the complaint, and there are no allegations directed against the Ohio Attorney General himself, the Court construes the complaint as naming the Ohio Attorney General in his official capacity. An action against a state official in his official capacity is the equivalent of an action against the State he represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) (citations omitted).

17

Thus, to the extent plaintiff seeks monetary damages from the Ohio Attorney General, his claims are barred by the Eleventh Amendment.

The Ohio Attorney General in his official capacity is not entitled to Eleventh Amendment immunity insofar as plaintiff seeks prospective relief. *See Will*, 491 U.S. at 71 n.10. The federal court may impose injunctive and prospective declaratory relief to compel a State official to comply with federal law "regardless of whether compliance might have an ancillary effect on the state treasury[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citations omitted). Thus, plaintiff's claims against the Ohio Attorney General for injunctive relief are not barred by the Eleventh Amendment. Nor is it clear from the complaint that plaintiff's claims against the Ohio Attorney General are barred by the Anti-Injunction Act, 28 U.S.C. § 2283, as it is it not apparent that plaintiff is seeking to stay state court proceedings involving the Ohio Attorney General.[6]

Any claims for injunctive relief that plaintiff brings against the Ohio Attorney General nonetheless must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The complaint, liberally construed, does not contain sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face" against this defendant. *See Iqbal*, 556 U.S. at 678. The facts alleged do not permit a reasonable inference that the Attorney General is liable for any misconduct in connection with plaintiff's failure to obtain mortgage assistance, or that the Ohio Attorney General violated any federal statutory or constitutional provisions by his actions.

For these reasons, the motion to dismiss filed by defendants State of Ohio and the Ohio

---

[6]The Anti-Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Attorney General should be granted.

## VIII.  JP Morgan Chase & Co.'s Motion to Dismiss the Complaint (Doc. 46)

Defendant Chase moves to dismiss plaintiff's complaint against it pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that subject matter jurisdiction is lacking and pursuant to Fed. R. Civ. P. 12(b)(6) on the ground the complaint fails to state a claim upon which relief can be granted.  Defendant contends that jurisdiction is lacking under the *Rooker-Feldman* doctrine and plaintiff has not stated plausible claims for "fraudulent representation" or violations of an alleged HUD service agreement.  Defendant contends that evidence of plaintiff's claims against it are premised on the state court proceedings, and the foreclosure decree is the only source of plaintiff's alleged injury as plaintiff asserts no injury resulting from any conduct by Chase independent of the state court foreclosure proceedings.  Plaintiff has not filed a memorandum in opposition to Chase's motion to dismiss.

Plaintiff's allegations against Chase asserted in the complaint are as follows:  Chase committed "fraudulent representation, violations of HUD service agreement." (Doc. 1, ¶ 26). The servicing on plaintiff's mortgage was sold to Chase when payment came due on July 1, 2008.  (*Id.*, ¶¶ 44, 45).  Plaintiff entered into a forbearance program with Chase that ended in March 2009, and he was to contact Chase if his employment status remained negative.  (*Id.*, ¶ 48).  He repeatedly attempted to contact Chase but was unsuccessful.  (*Id.*, ¶¶ 49, 53).  Chase claimed to have lost plaintiff's mortgage modification paperwork, and it did not offer to modify plaintiff's mortgage at an affordable rate prior to transferring the mortgage servicing.  (*Id.*, ¶¶ 58, 60, 61).  Chase erroneously advised plaintiff that a foreclosure process was discontinued on August 26, 2010, but the case was still pending in the Hamilton County Court of Common Pleas

19

two months after the supposed withdrawal. (*Id.*, ¶ 69).

Plaintiff's claims against Chase appear to be premised on actions that occurred prior to, and independent of, institution of the foreclosure actions and thus are not necessarily barred by the *Rooker-Feldman* doctrine. *See Hines*, No. 1:09cv914, 2011 WL 882976, at *3 (the *Rooker-Feldman* doctrine does not apply to bar review if a litigant presents a claim that is independent of the state-court judgment, including "'claims based on alleged violations of federal and state law' that are independent of alleged deficiencies in the state-court foreclosure proceeding."). The claims against Chase must nonetheless be dismissed for failure to state a claim upon which relief can be granted. Liberally construing the allegations of the complaint, plaintiff appears to allege state law claims of fraud and breach of contract by Chase. However, the complaint does not contain sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face" against this defendant. *See Iqbal*, 556 U.S. at 678.

To prove a breach of contract under Ohio law[7], a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff. *Doner v. Snapp,* 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). The allegations of the complaint, accepted as true, fail to state a claim for breach of contract. It cannot reasonably be inferred from the allegations of the complaint that plaintiff performed all of his obligations under the terms of a HUD servicing agreement with Chase, that Chase breached the agreement, and that Chase's breach caused damage to plaintiff. *See Harris v. Am. Postal Workers Union*, No. 99-1734, 1999 WL 993882, at *4 (6th Cir. Oct. 19, 1999) (citations omitted) (party claiming breach of contract

---

[7]Chase analyzes plaintiff's common law claims under Ohio law, and the Court will do the same in the absence of any opposition by plaintiff or any indication on the face of the complaint that any other State's law applies. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

must identify and present actual terms of contract allegedly breached).

Nor has plaintiff stated a claim for fraud against Chase. The elements of a fraud claim under Ohio law are: (1) a misrepresentation of a material fact; (2) made with knowledge of its falsity, or with such utter disregard as to its truth that knowledge may be inferred; (3) with the intent to induce another's reliance on it; (4) justifiable reliance upon the representation or concealment; and (5) a resulting injury proximately caused by the reliance. *Burr v. Bd. of Cnty. Comm'rs*, 491 N.E.2d 1101, 1105 (Ohio 1986). The allegations of the complaint are not sufficient to permit a reasonable inference that Chase made statements that it knew were false, or that it acted with the intent to deceive; and that plaintiff justifiably relied on any false representations by Chase and was injured thereby. *See Schwartz v. Bank One, Portsmouth, N.A.*, 619 N.E.2d 10, 12 (Ohio Ct. App. 1992) ("[A] cause of action cannot be classified a tort action simply because the appellant used the term 'fraudulently' in [the] pleading.")

For these reasons, the complaint against defendant Chase should be dismissed.

## IX. Defendant Ohio Housing Finance Agency's Motion to Dismiss (Doc. 48)

Defendant OHFA moves to dismiss the complaint against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant OHFA is named in the complaint as "Ohio Housing Financing Agency, *Save the Dream Oh Initiative - Restoring Stability,* Executive Director Douglas A. Garver." Plaintiff alleges in the complaint that he applied for mortgage assistance from "Save the Dream Ohio Initiative/Restoring Stability" ("Save the Dream") and that "Save the Dream" withheld emergency funding, collected documents, and worked in conjunction with the Ohio Attorney General. (Doc. 1, ¶¶ 35, 55). Plaintiff alleges that an application he filed with Save the Dream "was closed with false notations

21

on the application." (*Id.*, ¶ 70). Plaintiff asserts that he sent an email to the individual who made the notations, Jen Valentine, asking why she had falsified the documents, but he received no response. (*Id.*, ¶ 71). Plaintiff claims he has a right to emergency funds authorized by Congress. (*Id.*, ¶ 82). He generally alleges that funding to homeowners does not materialize and that victims of the banking system's scheme of profit have a constitutional right of redress. (*Id.*, ¶¶ 98, 103).

Plaintiff's allegations do not give defendant OHFA fair notice of the grounds upon which his claim against the organization rests and fail to state a claim for relief against OHFA. *See Erickson*, 551 U.S. at 93. Liberally construing the complaint, plaintiff claims that the organization denied him mortgage assistance, but he has not alleged any facts to show that OHFA violated any law or a constitutional right of plaintiff by denying such assistance. Plaintiff's vague allegations of false notations on his application are insufficient to show that OHFA committed an unlawful act that caused injury to plaintiff. As to any allegations that OHFA acted in concert with the Ohio Attorney General or any other defendant, plaintiff has failed to state a claim for civil conspiracy against OHFA. *See Heyne*, 655 F.3d at 563 (conspiracy claims must be pled with some degree of specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983). For these reasons, the complaint against defendant OFHA should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## X. Motion to Dismiss by Defendants MERS, Fannie Mae, and Seterus (Doc. 49)

Defendants MERS, Fannie Mae and Seterus (collectively "the MERS defendants") move to dismiss the complaint against them pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that

subject matter jurisdiction is lacking under the *Rooker-Feldman* doctrine, and pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the complaint is barred by res judicata and fails to state a claim upon which relief can be granted.

The complaint alleges that the MERS defendants committed "Racketeering in Securities and Commodities Fraud" through the following actions: MERS engaged in a fraudulent transaction and is further liable for "securitizing mortgages;" (Doc. 1, ¶ 23); Fannie Mae violated HUD's service agreement (*Id.*, ¶ 25); and Seterus, which acquired the servicing rights for plaintiff's mortgage loan from Chase, violated the HUD service agreement and purposely refused to adjust and modify the mortgage loan to an affordable amount in order to profit from the foreclosure of plaintiff's property. (*Id.*, ¶¶ 1, 27, 61). Plaintiff asserts that according to Seterus, the reason loans are not made affordable is because of laws and regulations, and its hands are tied because of federal bank rules. (*Id.*, ¶¶ 75, 102). Plaintiff further alleges that all service providers are in violation of 24 C.F.R. § 203, a regulation that governs HUD. (*Id.*, ¶ 85).      For the reasons explained in connection with the motion to dismiss filed by defendant Lerner Sampson, insofar as plaintiff challenges deficiencies in the state court proceedings and the state court judgment, his claims are barred by the *Rooker-Feldman* doctrine and should be dismissed pursuant to Rule 12(b)(1). *See* Section III, supra. Insofar as the complaint can possibly be construed as asserting claims against the MERS defendants independent of the state court foreclosure proceedings, plaintiff has failed to allege sufficient facts to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). Nor has plaintiff alleged facts to state a plausible claim against the MERS defendants for breach of the servicing agreement, for fraud, or for violation of any applicable federal or other regulations in connection with the servicing of plaintiff's

mortgage. *See Harris*, No. 99-1734, 1999 WL 993382. Plaintiff has also failed to allege any specific facts to show that the MERS defendants conspired with any other defendant to violate his civil rights. *See Heyne*, 655 F.3d at 563.

Accordingly, the Court lacks subject matter jurisdiction over plaintiff's claims against the MERS defendants to the extent plaintiff challenges the foreclosure proceedings, and his allegations otherwise fail to state a claim for relief against the MERS defendants. Plaintiff's claims against these defendants therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**XI. Defendant First Horizon Home Loans' Motion to Dismiss (Doc. 52)**

Defendant First Horizon moves to dismiss the complaint against it for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). First Horizon has submitted documents from the state court proceeding, *First Horizon Home Loans v. Daniel R. Haller*, Case No. A0806840 (Hamilton County Court of Common Pleas), which show that Haller executed a promissory note in favor of First Horizon on December 5, 2007, in the principal amount of $131,000 for property located at 4221 Sullivan Avenue, Cincinnati, Ohio; plaintiff was to make monthly payments in the amount of $904.79 to First Horizon starting on January 1, 2008; First Horizon filed a complaint in foreclosure against plaintiff; First Horizon sold the note and mortgage servicing to Chase and assigned the note and mortgage to Fannie Mae in August 2008. (Doc. 52, attachments).

The complaint alleges that First Horizon has committed a breach of contract and violations of a "HUD service agreement." (Doc. 1, ¶ 24). Plaintiff asserts that he entered into an agreement with First Horizon on March 21, 2008, to begin mortgage payments on July 1, 2008.

(Doc. 1, ¶ 44). Plaintiff claims that when payment became due, First Horizon sold the servicing of the loan to Chase. (*Id.*, ¶ 45). Plaintiff contends that when Lerner Sampson thereafter filed suit purportedly on behalf of First Horizon in state court, plaintiff gave an "account of a breach" caused by First Horizon, and Lerner Sampson withdrew the action. (*Id.*, ¶ 47). Plaintiff asserts that he also gave an account of the breach caused by First Horizon during the second state court action Lerner Sampson filed, purportedly on behalf of Chase. (*Id.*, ¶ 65). Plaintiff generally alleges that all service providers are in violation of 24 C.F.R. § 203 of the regulations governing HUD. (*Id.*, ¶ 85).

The complaint against First Horizon should be dismissed. Plaintiff has failed to allege facts that state a plausible claim for violation of his federal statutory or constitutional rights. Moreover, the allegations of the complaint, accepted as true, fail to establish that plaintiff performed all of his obligations under the terms of a HUD servicing agreement or other contract with First Horizon, that First Horizon breached any such agreement, and that First Horizon's breach caused damage to plaintiff. *See Harris*, No. 99-1734, 1999 WL 993382. Thus, the complaint fails to state a plausible claim for breach of contract.

### IT IS THEREFORE ORDERED THAT:

Plaintiff's motion to stay proceedings (Doc. 60) is **DENIED**. Plaintiff shall have **twenty-one (21) days** from the filing date of this Order to file a response to the motions to dismiss filed by the Commodity Futures Trading Commission (Doc. 61) and the U.S. Department of Housing and Urban Development, Office of the Comptroller of Currency, Office of Thrift Supervision, Board of Governors of the Federal Reserve System, Consumer Financial Protection Bureau, U.S. Securities and Exchange Commission, U.S. Department of the Treasury, and the United States of

America (Doc. 67).

## IT IS THEREFORE RECOMMENDED THAT:

The motions to dismiss filed by defendants (1) Securities Investor Protection Corp. (Doc. 22); (2) Lerner Sampson & Rothfuss (Doc. 25); (3) North American Securities Administrators Association, Jack Herstein and Steven Irwin (Doc. 29); (4) the State of Ohio and Ohio Attorney General Mike DeWine (Doc. 34); (5) JPMorgan Chase & Co. (Doc. 46); (6) Ohio Housing Financing Agency (Doc. 48); (7) MERSCORP, Inc., Federal National Mortgage Association Corporation and IBM/LBPS-Seterus (Doc. 49); and (8) First Horizon Home Loans (Doc. 52) be **GRANTED**.

Date: 7/10/12

Karen L. Litkovitz
United States Magistrate Judge

26

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DANIEL R. HALLER,                                Civil Action No. 1:11-cv-881
       Plaintiff,                        Beckwith, J.
                                                 Litkovitz, M.J.

       vs

U.S. DEPARTMENT OF HOUSING &
URBAN DEVELOPMENT,
       Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

27

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Daniel Haller
4221 Sullivan Ave.
Cinti, OH 45217

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( Printed Name)       C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7002 3150 0000 8389 9104

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540